# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARCY WOLF, Individually and On Behalf of All Others Similarly Situated, | ) Case No. _____ ) |
| Plaintiff, | ) CLASS ACTION ) ) JURY TRIAL DEMANDED |
| v. | ) ) |
| LIEEPOINT HEALTH, INC., WILLIAM F. CARPENTER III, KERMIT R. CRAWFORD, RICHARD H. EVANS, MICHAEL P. HALEY, MARGUERITE W. KONDRACKE, JOHN E. MAUPIN, JR., JANA R. SCHREUDER, and REED V. TUCKERSON, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by her undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on July 23, 2018 (the "Proposed Transaction"), pursuant to which LifePoint Health, Inc. ("LifePoint" or the "Company") will be acquired by affiliates of RCCH HealthCare Partners, which is owned by certain funds managed by affiliates of Apollo Global Management, LLC.

2. On July 22, 2018, LifePoint's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with RegionalCare Hospital Partners Holdings, Inc. and Legend Merger Sub, Inc. (together, "RCCH"). Pursuant to the terms of the Merger Agreement, if the Proposed Transaction is approved by LifePoint's shareholders and completed, LifePoint's stockholders will receive

$65.00 in cash for each share of the LifePoint common stock they hold.

3. On August 23, 2018, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of LifePoint common stock.

9. Defendant LifePoint is a Delaware corporation and maintains its principal executive offices at 330 Seven Springs Way, Brentwood, Tennessee. LifePoint's common stock

is traded on the NasdaqGS under the ticker symbol "LPNT." LifePoint is a party to the Merger Agreement.

10. Defendant William F. Carpenter III ("Carpenter") is the Chairman of the Board and Chief Executive Officer ("CEO") of LifePoint.

11. Defendant Kermit R. Crawford ("Crawford") is a director of LifePoint.

12. Defendant Richard H. Evans ("Evans") is a director of LifePoint.

13. Defendant Michael P. Haley ("Haley") is a director of LifePoint.

14. Defendant Marguerite W. Kondracke ("Kondracke") is a director of LifePoint.

15. Defendant John E. Maupin Jr. ("Maupin") is a director of LifePoint.

16. Defendant Jana R. Schreuder ("Schreuder") is a director of LifePoint.

17. Defendant Reed V. Tuckerson ("Tuckerson") is a director of LifePoint.

18. The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

19. Plaintiff brings this action as a class action on behalf of herself and the other public stockholders of LifePoint (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

20. This action is properly maintainable as a class action.

21. The Class is so numerous that joinder of all members is impracticable. As of July 20, 2018, there were 38,660,873 shares of LifePoint common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

22. Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act and whether defendants will irreparably harm plaintiff

and the other members of the Class if defendants' conduct complained of herein continues.

23. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

24. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

25. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

26. LifePoint is a leading healthcare company. Through its subsidiaries, the Company provides quality inpatient, outpatient, and post-acute services.

27. LifePoint owns and operates community hospitals, regional health systems, physician practices, outpatient centers, and post-acute facilities in twenty-two states.

28. On July 22, 2018, LifePoint's Board caused the Company to enter into the Merger Agreement.

29.     Pursuant to the terms of the Merger Agreement, if the Proposed Transaction is approved by LifePoint's shareholders and completed, LifePoint's stockholders will receive $65.00 in cash for each share of the LifePoint common stock they hold.

30.     According to the press release announcing the Proposed Transaction:

> LifePoint Health, Inc. (NASDAQ: LPNT) ("LifePoint") and RCCH HealthCare Partners ("RCCH"), which is owned by certain funds managed by affiliates of Apollo Global Management, LLC (NYSE: APO) (together with its consolidated subsidiaries, "Apollo"), today announced that they have entered into a definitive agreement to merge. Upon closing of the transaction, LifePoint shareholders will receive $65.00 per share in cash for each share of LifePoint common stock they own, resulting in a LifePoint enterprise value of approximately $5.6 billion, including $2.9 billion of net debt and minority interest. The purchase price represents a premium of approximately 36% to LifePoint's closing share price on July 20, 2018, the last trading day prior to the announcement.
>
> Upon completion of the transaction, the combined company will be privately held, operate under the LifePoint Health name and be led by William F. Carpenter III, chairman and chief executive officer of LifePoint.
>
> LifePoint and RCCH are among the nation's leading healthcare providers, owning and operating networks of hospitals, post-acute service providers and outpatient centers that are integral to their communities. Both companies share a commitment to providing high quality care to regional markets. The combination of these two companies will create an even stronger healthcare provider with pro forma 2017 revenues of more than $8 billion as well as 7,000 affiliated physicians, approximately 60,000 employees and more than 12,000 licensed beds. Following the close of the transaction, LifePoint will operate a diversified portfolio of healthcare assets, including 84 non-urban hospitals in 30 states, regional health systems, physician practices, outpatient centers and post-acute service providers, with leading market positions as the sole community healthcare provider in the majority of the regions it serves. The combined company intends to maintain strategic partnerships with well-known leaders in patient safety and clinical quality to bring leading practices in quality and patient safety to each of its communities.
> . . .
>
> Following the close of the transaction, the combined company will be named LifePoint Health, and the company's headquarters will continue to be in Brentwood, TN, where both companies' headquarters are currently located.
>
> The transaction is expected to be completed over the course of the next several months, subject to customary closing conditions, including approval by LifePoint's shareholders and receipt of applicable regulatory approvals.

Under the terms of the definitive agreement, which has been unanimously approved by the LifePoint Board of Directors, LifePoint may actively solicit alternative acquisition proposals during a 30-day period following the execution date of the definitive agreement, continuing until 12:01 a.m. ET on August 22, 2018. There can be no assurances that this process will result in a superior proposal, and LifePoint does not intend to discuss any developments with regard to this process unless and until the LifePoint Board of Directors makes a decision with respect to any potential superior proposal.

Financing is being provided by Barclays, Citigroup, RBC Capital Markets and Credit Suisse. PSP Investments Credit USA LLC and an affiliate of Qatar Investment Authority have also committed to provide a portion of the debt financing. The financing also includes an equity contribution from funds managed by Apollo.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

31.     Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction.

32.     The Proxy Statement omits material information regarding the Company's financial projections as well as the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Goldman Sachs & Co. LLC ("Goldman").

33.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.  Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

34. With respect to Goldman's Illustrative Present Value of Future Share Price Analyses, the Proxy Statement fails to disclose: (i) the estimated net debt and minority interest of LifePoint; (ii) the estimated fully-diluted shares of LifePoint common stock outstanding; and (iii) the inputs and assumptions underlying the discount rate of 9.6%.

35. With respect to Goldman's Illustrative Discounted Cash Flow Analyses, the Proxy Statement fails to disclose: (i) the range of illustrative terminal values for LifePoint; (ii) LifePoint's net debt and minority interest; (iii) the inputs and assumptions underlying the discount rates ranging from 7.0% to 8.5%; and (iv) the fully-diluted shares of LifePoint common stock outstanding.

36. With respect to Goldman's Premia Paid Analysis, the Proxy Statement fails to disclose the transactions observed by Goldman in the analysis as well as the premiums paid in such transactions.

37. The Proxy Statement also omits material information regarding potential conflicts of interest of the Company's officers and directors.

38. The press release announcing the Proposed Transaction, which was issued jointly by LifePoint and RCCH and which is posted on the Company's website, states:

> Upon completion of the transaction, the combined company will be privately held, operate under the LifePoint Health name and *be led by William F. Carpenter III, chairman and chief executive officer of LifePoint*. . . .
>
> Following the close of the transaction, the combined company will be named LifePoint Health, and the company's headquarters will continue to be in Brentwood, TN, where both companies' headquarters are currently located.

(Emphasis added).

39. The Proxy Statement provides:

> On July 23, 2018, LifePoint and Parent issued a joint press release announcing the execution of the merger agreement. The press release indicated that the combined

company would be led by Mr. Carpenter post-closing. As of the date of such press release, neither Apollo nor Parent had discussed with Mr. Carpenter or other members of LifePoint's senior management the terms of any proposed retention.

40.     The Proxy Statement further states: "It is possible that, before the closing of the merger, arrangements with respect to continuing employment after the merger may be entered into with one or more members of LifePoint's management."

41.     The Proxy Statement fails to, but must, disclose the timing and nature of all communications regarding future employment and directorship of the Company's officers and directors, including who participated in all such communications, as well as the basis for the Company's announcement that "the combined company will be . . . led by William F. Carpenter III, chairman and chief executive officer of LifePoint."

42.     Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.  This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

43.     The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Recommendation of the LifePoint Board; Reasons for the Merger; (iii) Opinion of LifePoint's Financial Advisor; and (iv) Certain LifePoint Forecasts.

44.     The omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

# COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and LifePoint

45. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

46. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. LifePoint is liable as the issuer of these statements.

47. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

48. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

49. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

50. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

51. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

52. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

53. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

54. The Individual Defendants acted as controlling persons of LifePoint within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of LifePoint and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

55. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

56. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

57. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

58. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: September 7, 2018                    **RIGRODSKY & LONG, P.A.**

                                            By: */s/ Gina M. Serra*
                                            Brian D. Long (#4347)
**OF COUNSEL:**                             Gina M. Serra (#5387)
                                            300 Delaware Avenue, Suite 1220
**RM LAW, P.C.**                            Wilmington, DE 19801
Richard A. Maniskas                         Telephone: (302) 295-5310
1055 Westlakes Drive, Suite 300             Facsimile: (302) 654-7530
Berwyn, PA 19312                            Email: bdl@rl-legal.com
Telephone: (484) 324-6800                   Email: gms@rl-legal.com
Facsimile: (484) 631-1305
Email: rm@maniskas.com                      *Attorneys for Plaintiff*